IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN PATRICK O'LEARY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WEXFORD HEALTH SOURCES, INC., ET AL. | : | NO. 16-1393 |

**MEMORANDUM**

**Padova, J.**                                                                                            February 22, 2018

      Plaintiff Shawn Patrick O'Leary has brought this action against Wexford Health Sources, Inc. ("Wexford") and two doctors employed by Wexford, asserting federal and state law claims regarding the medical care that Defendants provided to him while he was incarcerated at the State Correctional Institute at Chester, Pennsylvania ("SCI Chester"). Defendants have moved to dismiss O'Leary's Second Amended Complaint. For the reasons that follow, the Motion is denied.

**I.     FACTUAL BACKGROUND**

      The Second Amended Complaint alleges the following facts. From February 14, 2013 until November 18, 2014, O'Leary was committed to the custody of the Pennsylvania Department of Corrections ("DOC") for a probation violation. (2d Am. Compl. ¶ 11.) O'Leary was housed at SCI Chester from May 22, 2013 until June 13, 2014, when he was transferred to the State Correctional Institute at Pittsburgh, Pennsylvania ("SCI Pittsburgh"). (Id.) During this time, Wexford was the health care provider for all DOC facilities, including SCI Chester. (Id. ¶ 4.) Wexford employed Defendant Raul Yankelevich, M.D. as a doctor at SCI Chester. (Id. ¶¶ 5-6.) Defendant Stephen Ritz, D.O. was at all relevant times the Corporate Medical Director and

Corporate Utilization Management Director for Wexford, with medical overview authority for all of the DOC facilities, including SCI Chester. (Id. ¶ 7.)

In September 2010, O'Leary underwent a right total hip replacement/arthroplasty because of injuries he suffered in a 2009 automobile accident. (Id. ¶ 1.) On March 27, 2014, while he was incarcerated at SCI Chester, O'Leary began to experience pain, swelling, and the draining of pus in the area of his surgical scar on his right hip. (Id. ¶ 12.) He went to SCI Chester's medical unit complaining of right hip pain, redness and swelling and was placed on the referral sheet for the next available doctor. (Id.)

Two days later, on March 29, 2014, O'Leary was seen by Dr. A.M. Eubanks, who noted that O'Leary's right hip was swollen and tender and had some drainage. (Id. ¶ 13.) On March 31, 2014, O'Leary was treated by Dr. Yankelevich, who stated in O'Leary's progress notes that he was being treated with antibiotics. (Id. ¶ 14.) Dr. Yankelevich also requested a complete blood count, which was done that day; scheduled x-rays of O'Leary's right hip for April 2, 2014; and ordered that the dressing on O'Leary's wound be changed daily for seven days. (Id. ¶¶ 14-15.) On April 4, 2014, Dr. Yankelevich made an entry in O'Leary's progress notes requesting an orthopedic consultation and placing a 90 day medical hold on O'Leary. (Id. ¶ 16.)

On May 21, 2014, additional x-rays were taken of O'Leary's right hip. (Id. ¶ 17.) These x-rays showed "loosening around the femoral stem," which suggested loosening of the arthroplasty. (Id.) On May 22, 2014, after reviewing the new x-rays, Dr. Yankelevich wrote in O'Leary's progress notes that he needed an emergency consultation with an orthopedic specialist. (Id.) On May 23, 2014, Dr. Ritz approved Dr. Yankelevich's recommendation that O'Leary be taken to see an orthopedic specialist. (Id. ¶ 18.)

On May 29, 2014, O'Leary was taken to the office of orthopedic specialist Evan K. Bash, M.D. for a consultation regarding his right hip. (Id. ¶ 19.) Dr. Bash wrote in his report that O'Leary had intermittent moderate to severe right hip pain that was worsening and was aggravated by movement, sitting, walking, and standing. (Id.) Dr. Bash concluded that O'Leary would "[r]equire[] implant removal and prostalac with 6 weeks IV antibiotics and revision prosthesis." (Id.) On May 30, 2014, following this consultation, Dr. Yankelevich made the following entry into O'Leary's progress notes: "Consult from Dr. Bash (Orthopedics) from 5/29/14 reviewed. Consult for surgical revision R hip arthroplasty." (Id. ¶ 21.) O'Leary had additional right hip surgical scar drainage on May 31, 2014. (Id. ¶ 22.)

On June 13, 2014, O'Leary was transferred to SCI Pittsburgh. (Id. ¶ 24.) He was told that he was being transferred because Wexford had contracts with hospitals in Pittsburgh. (Id.) When O'Leary was transferred to SCI Pittsburgh, there was no medical consult or medical authorization for his right hip replacement/arthroplasty surgery, delaying his surgery for nearly two months. (Id. ¶¶ 25-26.) He was not examined by a surgeon in Pittsburgh until July 11, 2014, nearly a month after his transfer. (Id.) Dr. Julius J. Huebner performed the first surgical procedure on O'Leary's right hip on July 23, 2014, at Allegheny Hospital in Pittsburgh, Pennsylvania. (Id. ¶ 27.) Dr. Huebner operated on O'Leary's right hip again on September 3, 2014 and did a total revision right hip replacement/arthroplasty surgery on O'Leary on November 5, 2014. (Id.)

O'Leary was ultimately required to undergo three surgeries instead of one surgery of the exacerbation because of the infection in his right hip caused by the delay. (Id. ¶ 28.) The delay also caused worsening of O'Leary's pain, inflammation, sleeplessness, difficulty walking, and emotional difficulties. (Id. ¶¶ 25, 28.) Moreover, as a direct result of his having to undergo

3

three surgeries, O'Leary has permanent right leg/hip injuries that cause imbalance, pain, and limping. (Id. ¶¶ 29-30.)

The Second Amended Complaint asserts three claims for relief. Count I asserts a claim pursuant to 42 U.S.C. § 1983 against all Defendants for deliberate indifference to O'Leary's serious medical needs in violation of the Eighth Amendment to the United States Constitution. Count II asserts a medical malpractice claim against Wexford and Dr. Yankelevich pursuant to Pennsylvania common law. The third claim, labeled Count IV, asserts a medical malpractice and vicarious liability claim against Wexford. The Second Amended Complaint requests compensatory and punitive damages from all Defendants, as well as interest, reasonable attorney's fees and costs.

Defendants have moved to dismiss the Second Amended Complaint on three grounds. They contend that Plaintiff's § 1983 claim should be dismissed because the Second Amended Complaint fails to allege facts that would establish that Defendants were deliberately indifferent to his serious medical needs. They also argue that Plaintiff's medical malpractice claims asserted against Wexford in Counts II and IV should be dismissed because he failed to submit a Certificate of Merit as to Wexford. Finally, Defendants argue that Plaintiff's request for punitive damages should be dismissed because the Second Amended Complaint fails to allege facts that would establish that Defendants' conduct satisfies the requirements for an award of punitive damages under Pennsylvania law.[1]

---

[1] Defendants also ask us to decline to exercise our supplemental jurisdiction over O'Leary's state law claims if we dismiss his federal law claim. Since we deny the motion to dismiss as to O'Leary's § 1983 claim, we need not address this argument.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).[2] We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d

---

[2] Defendants ask us to dismiss the Second Amended Complaint in its entirety. However, their Motion, like their Motion to Dismiss Plaintiff's First Amended Complaint, does not specify the Federal Rule of Civil Procedure pursuant to which they have moved and does not contain any mention of the legal standard they believe should be utilized in this case. We assume, however, that they are moving to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and we therefore decide the Motion on that basis.

Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'" Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (alteration in original) (quoting Iqbal, 556 U.S. at 678). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

#### A. Eighth Amendment

Defendants argue that we should dismiss Count I of the Second Amended Complaint because it does not allege facts that would show that they were deliberately indifferent to O'Leary's serious medical needs. Count I alleges that the Defendants "with deliberate indifference, failed to provide necessary and proper medical care to Plaintiff Shawn Patrick O'Leary, thereby causing the violation of his rights under the 8th Amendment to the U.S. Constitution . . . ." (2d Am. Compl. ¶ 34.) The Eighth Amendment's right to be free from cruel and unusual punishment "imposes duties on [prison] officials, who must . . . ensure that inmates receive . . . medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)) (additional citations omitted). To state a claim under the Eighth Amendment arising from an inmate's medical care, a complaint must plausibly allege that a defendant showed "[1] deliberate indifference to [2] serious medical needs of [a] prisoner[]."

6

Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). Thus, "mere allegations of malpractice" are not sufficient to allege "deliberate indifference." Id. at 106 n.14 (citations omitted).

"A medical need is serious if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Stones v. McDonald, 573 F. App'x 236, 237 (3d Cir. 2014) (per curiam) (quoting Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). A prison official acts with deliberate indifference to a serious medical need "when he knows of and disregards an excessive risk to inmate health or safety." Brown v. Thomas, 172 F. App'x 446, 450 (3d Cir. 2006) (citing Farmer, 511 U.S. at 837). "The official must be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (citation omitted). "Deliberate indifference can be shown by a prison official 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" Stones, 573 F. App'x at 237 (quoting Estelle, 429 U.S. at 104-05). "[D]eliberate indifference 'requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.'" Baez v. Falor, 566 F. App'x 155, 158 (3d Cir. 2014) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

Defendants do not dispute that the Second Amended Complaint plausibly alleges that O'Leary had significant medical needs while he was incarcerated at SCI Chester. However, they argue that the Second Amended Complaint does not allege facts that would establish that they were deliberately indifferent to those serious medical needs. Rather, Defendants contend that O'Leary simply disagrees with the Defendants regarding his medical treatment. "'Courts will

7

disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" Bonadonna v. Zickefoose, 601 F. App'x 77, 79 (3d Cir. 2015) (per curiam) (alteration in original) (quoting Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

In support of this argument, Defendants contend that, while O'Leary asserts in the Second Amended Complaint that they failed to "provide for prompt and necessary medical tests, hospitalizations including off site medical hospitalization and medical treatment" (2d Am. Compl. ¶ 32), he was actually provided with ample treatment for his medical condition, including care by physicians outside of the prison system. However, Defendants largely rely on allegations of fact contained in the First Amended Complaint, which we cannot consider in the context of the instant Motion. See W. Run Student Hous. Assocs., 712 F.3d at 173 ("[A]t the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint."). Indeed, "'[i]t is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*" and those facts "cannot be considered by the court on a motion to dismiss the amended complaint." Id. at 172 (alteration in original) (quoting Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1204-05 (7th Cir. 1998)).

O'Leary maintains that the Second Amended Complaint alleges a facially plausible § 1983 claim for violation of his Eighth Amendment rights because it alleges that Defendants transferred him to SCI Pittsburgh without medical consult or medical authorization, thereby delaying his medically necessary surgery and causing him to experience unnecessary pain and worsening of his medical condition and permanent injury. Indeed, as detailed above, the Second

8

Amended Complaint alleges that, on April 4, 2014, Dr. Yankelevich placed a 90 day medical hold on O'Leary and in May 2014, Defendants were aware that O'Leary "[r]equire[d] implant removal." (Id. ¶¶ 16, 19, 21.) The Second Amended Complaint further alleges that on June 13, 2014, notwithstanding O'Leary's medical hold, and despite knowing that O'Leary required surgical revision of his right hip, Defendants transferred O'Leary to SCI Pittsburgh without the necessary medical consults and authorizations, thus delaying O'Leary's necessary medical care (his first hip surgery) until July 23, 2014, nearly two months after Defendants became aware that O'Leary required this treatment. (Id. ¶¶ 16, 24-28, 30.) The Second Amended Complaint also alleges that, as a result of this delay, O'Leary required three surgeries for his right hip replacement, rather than one; and suffered "severe physical pain, emotional pain, inability to sleep, serious infection, serious inflammation, and difficulty in the ability to walk." (Id. ¶ 25.) In addition, because he had to undergo multiple surgeries, O'Leary has permanent injuries to his right leg and hip, which cause "imbalance, pain, and limping." (Id. ¶ 29.)

We conclude that the Second Amended Complaint sufficiently alleges that Defendants were aware of and disregarded an excessive risk to O'Leary's health when they transferred him to SCI Pittsburgh without necessary medical authorizations and consults.[3] See Brown, 172 F. App'x at 450 (citation omitted). We further conclude, accordingly, that the Second Amended

---

[3] Defendants also argue that Count I should be dismissed as against Dr. Ritz, because the Second Amended Complaint fails to allege that he was personally involved in the alleged deprivation of O'Leary's Eighth Amendment rights. "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (alteration in original) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). The Second Amended Complaint does, however, allege that Dr. Ritz was aware of O'Leary's medical condition and was personally involved in the decision to transfer him to SCI Pittsburgh without the necessary medical authorizations and consults. (See 2d Am. Compl. ¶¶ 18, 25, 30.) Consequently, we deny the Motion to Dismiss Count I as against Dr. Ritz.

Complaint alleges a facially plausible § 1983 claim for violation of O'Leary's Eighth Amendment rights, and we deny the Motion to Dismiss as to Count I.

B. Medical Malpractice

Defendants argue that the medical malpractice claim in Counts II and IV of the Second Amended Complaint should be dismissed as against Wexford because O'Leary has failed to file a valid and timely Certificate of Merit as to Wexford. Under Pennsylvania Rule of Civil Procedure 1042.3, a plaintiff must file a timely certificate of merit in order to raise a state law professional malpractice claim. See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011) (determining that Pennsylvania Rule 1042.3, which requires the filing of a certificate of merit by an individual raising a claim of professional malpractice, is "substantive law under the Erie rule and must be applied as such by federal courts"). Defendants contend that Counts II and IV must be dismissed as against Wexford because O'Leary has filed a Certificate of Merit only as to Dr. Yankelevich, and not as to Wexford. However, the Certificate of Merit that O'Leary filed in this case specifically names both Dr. Yankelevich and Wexford. (See Docket No. 8-1 at 2.) Consequently, we deny the Motion to Dismiss as to Counts II and IV.

C. Punitive Damages

Defendants argue that O'Leary's request for punitive damages should be dismissed because the Second Amended Complaint does not allege facts that would establish grounds for an award of punitive damages under Pennsylvania law. Defendants rely on Pennsylvania's Medical Care Availability and Reduction of Error Act (the "MCARE Act"), which provides that "[p]unitive damages may be awarded for conduct that is the result of the health care provider's

willful or wanton conduct or reckless indifference to the rights of others."[4] 40 Pa. Stat. Ann. § 1303.505(a). "A showing of gross negligence is insufficient to support an award of punitive damages." Id. § 1303.505(b).

In order to plead the requisite reckless indifference for punitive damages, a complaint must plausibly allege that: "'(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.'" Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., 801 F.3d 347, 360 (3d Cir. 2015) (quoting Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 772 (2005)). As we discussed in the context of Count I, the Second Amended Complaint alleges that Defendants were aware of O'Leary's significant medical needs, including his need for surgical revision of his right hip, and, notwithstanding this knowledge, Defendants transferred O'Leary to SCI Pittsburgh without the necessary medical consults and authorizations, thereby delaying O'Leary's necessary medical care (the first of his three hip surgeries) until July 23, 2014, nearly two months after Defendants became aware that O'Leary required this treatment. (2d Am. Compl. ¶¶ 24-27, 28, 30.) We conclude that the Second Amended Complaint thus plausibly alleges that Defendants acted with reckless indifference, as it alleges that they had a subjective appreciation of the risk of harm to which O'Leary was exposed and they transferred him to SCI Pittsburgh without the necessary medical consults and authorizations in conscious disregard of that risk. Consequently, we deny the Motion to Dismiss as to O'Leary's demand for punitive damages.

---

[4]Defendants have supplied no authority that would establish that the MCARE Act applies to O'Leary's request for punitive damages in connection with his § 1983 claim. Accordingly, we consider Defendants' MCARE Act argument only with respect to O'Leary's request for punitive damages in connection with his state law malpractice claims in Counts II and IV.

**IV.     CONCLUSION**

For the reasons stated above, we deny Defendants' Motion to Dismiss the Second Amended Complaint in its entirety.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.